

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-0946-10

### THE STATE OF TEXAS

#### v.

### CHRIS ALLEN MCLAIN, Appellee

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE SEVENTH COURT OF APPEALS HALE COUNTY

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, PRICE, WOMACK, KEASLER and COCHRAN, JJ., joined. JOHNSON, J., filed a dissenting opinion.

## O P I N I O N

A Hale County Grand Jury indicted appellee on a charge of possession with the intent to deliver methamphetamine, in an amount of four grams or more but less than two hundred grams. Appellee's trial counsel filed a motion to suppress the contraband seized as a result of a search authorized by a search warrant. The trial court granted the motion to suppress, and the court of appeals affirmed the judgment. We will reverse and remand to the trial court.

# I. FACTUAL BACKGROUND

Plainview Police Department police officers executed a search warrant at Appellee's home and business on February 27, 2009. During the execution of the search warrant, the officers seized over 100 grams of methamphetamine. A Hale County grand jury indicted the Appellee on April 17, 2009. Appellee's counsel filed a motion to suppress on June 16, 2009. The trial court granted the suppression motion on July 14, 2009. In the trial court's findings of fact and conclusion of law, it found that "there was no point of reference given in the affidavit for any time frame for any of the substantive information in the affidavit" to support the magistrate's finding of probable cause. The affidavit supporting the search warrant, in whole, reads as follows:

> The Affiant, Ramiro Sanchez is a certified peace officer of The State Of Texas, is employed by the Plainview Police Department, who is assigned to the Criminal Investigation Division as the Narcotics Detective. The Affiant is in good standing with his employing agency and with the State Of Texas. The Affiant has received information from unknown callers through the crime line, office phone and cell phone that Chris McClain is storing and selling methamphetamine "meth" at his residence and business, which is 3607 N. Columbia. Some of the callers stated that Chris is also buying or taking stolen items for payment on narcotics. The Affiant has previous knowledge that Chris was a user of methamphetamine and had been seen with other users and dealers of methamphetamine, who were under investigation by the Affiant at that time. The Affiant set up surveillance on the suspected place and did observe some minute traffic, which is a sign of narcotics trafficking from the affiant's training and experience. The Affiant observed some persons coming and going from the suspected place to be known users or dealers of narcotics, from past investigations. The time of the traffic varied but appeared to be most heavy at night, which is very common in the use or sale of methamphetamine. The Affiant then received the same information from different confidential informants. All informants have given true information in the past and are in good standing. The information received advised that Chris was using and selling methamphetamine. The informants advised that Chris was also buying and taking as payment for "meth", stolen items like welders, generators, vehicle parts, vehicles, trailers, trucks, tools, guns and many other items. They also advised that Chris will hide or store the methamphetamine in all different kinds of places, from inside the residence and shop to the vehicles and trailers on property. Inside the residence there is a fireplace and some of the bricks around it are loose and used to hide the "meth". In the shop, some of the tool boxes are used to store it and also the office in the shop. In the past 72 hours, a confidential informant advised the

Affiant that Chris was seen in possession of a large amount of methamphetamine at his residence and business. The informant again advised that Chris will hide or store the methamphetamine in all different places on the property. The informant is trustworthy, credible, and reliable and holds a steady fulltime job. Therefore the Affiant has reason to believe and does believe that methamphetamine "meth" is being sold and stored at 3607 N. Columbia. The Affiant asks that the identity of the informant be kept secret for security reasons.

The State claimed on direct appeal that the trial court abused its discretion in granting the suppression motion because the statement about the "past 72 hours" could imply that the informant saw Appellee with the methamphetamine during that time. The court of appeals disagreed, reasoning that "such implication is not supported by the plain text of the affidavit," and that under a common sense reading of the affidavit, the reference to the "past 72 hours" referred to when the detective spoke to the informant, not to when the informant got the information about the Appellee.[1] Focusing solely on the "past 72 hours" statement in the search warrant affidavit, the court of appeals decided that the "affidavit fail[ed] to give the magistrate any idea of when any of the activity which allegedly supports the issuance of a warrant occurred" which was "fatal to the efficacy of the affidavit."[2]

## II. DISCUSSION

### Grounds for Review

This Court granted review of the following grounds: (1) Does an appellate court violate the prohibition on "hypertechnical" review of a warrant affidavit when it strictly applies rules of grammar and syntax in its analysis? (2) Is it appropriate for an appellate court to base its opinion on implications found within a warrant affidavit, rather than deferring to any reasonable

---

[1] *See State v. McLain*, 310 S.W.3d 180, 183 (Tex. App.–Amarillo 2010).

[2] *See id*.

inferences the reviewing magistrate could have drawn from the affidavit? (3) Did the appellate court err by failing to address whether the trial court afforded appropriate deference to the reviewing magistrate's implicit finding that the informant described in the affidavit saw the methamphetamine "in the past 72 hours?"

**Standard of Review And Requirement of Probable Cause**

This Court normally reviews a trial court's ruling on a motion to suppress by using a bifurcated standard of review, where we give almost total deference to the historical facts found by the trial court and review de novo the trial court's application of the law.[3]  However, when the trial court is determining probable cause to support the issuance of a search warrant, there are no credibility determinations, rather the trial court is constrained to the four corners of the affidavit.[4] Accordingly, when we review the magistrates's decision to issue a warrant, we apply a highly deferential standard because of the constitutional preference for searches to be conducted pursuant to a warrant as opposed to a warrantless search.[5]  As long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable cause determination.[6]

We are instructed not to analyze the affidavit in a hyper-technical manner.[7]  When

---

[3] *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007).

[4] *Hankins v. State*, 132 S.W.3d 380, 388 (Tex. Crim. App. 2004).

[5] *Swearingen v. State*, 143 S.W.3d 808, 810-11 (Tex. Crim. App. 2004) (citing *Illinois v. Gates*, 462 U.S. 213, 234-37 (1983)).

[6]  *Gates* at 236.

[7]*Id.*

"reviewing a magistrate's decision to issue a warrant, trial and appellate courts apply a highly deferential standard in keeping with the constitutional preference for a warrant.  Thus, when an appellate court reviews an issuing magistrate's determination, that court should interpret the affidavit in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences.  When in doubt, we defer to all reasonable inferences that the magistrate could have made."[8]

Since the Fourth Amendment strongly prefers searches to be conducted pursuant to search warrants, the United States Supreme Court has provided incentives for law-enforcement officials to obtain warrants instead of conducting warrantless searches.[9] One incentive is a less-strict standard for reviewing the propriety of a search conducted pursuant to a warrant.[10]  In this situation, courts must give great deference to the magistrate's probable-cause determination.[11] Both appellate courts and trial courts alike must give great deference to a magistrate's implicit finding of probable cause.[12]

An evaluation of the constitutionality of a search warrant should begin with the rule "the informed and deliberate determinations of magistrates empowered to issue warrants are to be

---

[8] *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007) (footnotes and citations to authority omitted)..

[9] *Lane v. State*, 971 S.W.2d 748, 750-51 (Tex. App.—Dallas 1998, pet. ref'd).

[10] *Rodriguez* at 61; *Ornelas v. United States*, 517 U.S. 690 (1996).

[11] *Rodriguez* at 61; *Gates*, 462 U.S. at 234-37.

[12] *Rodriguez* at 61.

preferred over the hurried action of officers who may happen to make arrests."[13] Reviewing courts should not "invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than commonsense, manner."[14] When in doubt, the appellate court should defer to all reasonable inferences that the magistrate could have made.[15]

A magistrate shall not issue a search warrant without first finding probable cause that a particular item will be found in a particular location.[16] Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found at the specified location.[17] It is a flexible and non-demanding standard.[18] The facts stated in a search affidavit "must be so closely related to the time of the issuance of the warrant that a finding of probable cause is justified."[19]

### Analysis

The court of appeals violated the prohibition on "hypertechnical" review of a warrant

---

[13] *Rodriguez* at 59.

[14] *Rodriguez* at 59.

[15] *Id*. at 61

[16]*Id.* at 61; U.S. CONST. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.")

[17] *Rodriguez* at 61.

[18] *Id*.

[19] *Flores v. State*, 827 S.W.2d 416, 418 (Tex. App.— Corpus Christi 1992, pet. ref'd.); *see also Sherlock v. State*, 632 S.W.2d 604, 608 (Tex. Crim. App. 1982) (affidavit is "inadequate if it fails to disclose facts which would enable the magistrate to ascertain from the affidavit that the event upon which the probable cause was founded was not so remote as to render it ineffective") (internal quotes omitted).

affidavit when it strictly applied rules of grammar and syntax in its analysis. Further, the court of appeals reviewed the affidavit by focusing on what the officer "implied" rather than on what the magistrate could have reasonably inferred. The words "implies" and "inference" speak to information not specifically stated.[20] However, it is the reasonableness of the magistrate's conclusions based on facts and inferences which is the proper standard. The Supreme Court has explained how we must review determinations of probable cause:

> [A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's determination of probable cause should be paid great deference by reviewing courts. . . . A grudging or negative attitude by reviewing courts toward warrants . . . is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner."[21]

The court of appeals acknowledged that a highly deferential standard applies to the magistrate's decision in an affidavit, but failed to apply that standard in the case at hand. The court of appeals analyzed, in isolation, the sentence, "In the past 72 hours, a confidential informant advised the Affiant that Chris was seen in possession of a large amount of methamphetamine at his residence and business." The court of appeals agreed with the trial court that the affidavit "lacked any specificity regarding when the matters referenced" occurred and held that a "common sense reading" indicated that the affidavit's reference to the "past 72 hours" referred to "when the affiant spoke to the confidential informant, not when the confidential

---

[20] THE AMERICAN HERITAGE BOOK OF ENGLISH USAGE (Houghton Mifflin, 1996).

[21] *Gates*, 462 U.S. at 236 (citations and internal quotes omitted); *United States v. Ventresca*, 380 U.S. 102, 108 (1965).

informant acquired the information."[22]  The court of appeals's analysis conflicts with the established requirement that courts review warrant affidavits as a whole.[23] As a result, it found that the affidavit failed to provide probable cause.

While the plain meaning of the aforementioned statement, read literally, fails to clearly indicate exactly when the informant observed Appellee in possession of the methamphetamine, we believe that the magistrate could have reasonably inferred that the informant observed Appellee with the methamphetamine within the past 72 hours.  By looking at the affidavit in its entirety, and not just this one sentence in isolation, it certainly would have been reasonable for the magistrate, considering all the facts in the affidavit along with reasonable inferences from those facts, to conclude that there was a fair probability that there was methamphetamine at appellee's home at the time of the issuance of the warrant. We also believe that a magistrate's experience and expertise in these matters would indicate that the time at which the affiant received the information from the confidential informant that Appellee possessed methamphetamine was irrelevant, but that the time at which the confidential informant observed such possession was necessary to establish probable cause.  And if there was any doubt, the trial and appellate courts both should have deferred to the magistrate's determination.[24] They failed to do so.

We further note that other information in the affidavit from "unknown callers" stating that appellant "**is** storing and selling methamphetamine 'meth' at his residence and business" combined with the affiant's statements in the affidavit regarding the affiant's surveillance and

---

[22] *McLain* at 183.

[23] *Hall v. State*, 795 S.W.2d 195, 197 (Tex. Crim. App. 1990).

[24] *Rodriguez* at 61.

observations consistent with ongoing drug activity at appellant's residence and business could also justify a magistrate's conclusion that methamphetamine was probably at the suspected place when the warrant issued (emphasis supplied). *See Flores*, 827 S.W.2d 419 (use of present verb tense in affidavit that confidential informant advised affiant that "there *is* stolen property at the suspected residence" supported magistrate's conclusion that the stolen items were at the suspected place when he issued the warrant) (emphasis in original) and at 420 ("When stolen items have been viewed more than once, and there is nothing to suggest that the stolen items will not be at the suspected place in the future, the magistrate may weigh this fact in his calculations concerning the probability that the items will be on the suspected property."); *Swearingen*, 143 S.W.3d at 813 (Cochran, J., dissenting) (staleness of information in a search warrant affidavit depends on the particular circumstances of the case: "An ongoing enterprise tends to continue over time, but a single possession of a consumable contraband may be over with a gulp or snort and never reoccur"); *see also United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972) ("Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant.").

As stated in *Rodriguez*, "the informed and deliberate determinations of magistrates empowered to issue warrants are to be preferred over the hurried action of officers who may happen to make arrests."[25] The opinion of the court of appeals chose the "hurried" words of the officer over reasonable inferences that the magistrate could have made. Both the trial court and

---

[25] *Rodriguez* at 59.

the court of appeals were reviewing the affidavit in search of what the affiant was conveying as the author of the affidavit, rather than inquiring into the reasonableness of the conclusions drawn by the magistrate (i.e., they were reviewing the affidavit in search of what the affiant was implying or conveying by the statement "in the last 72 hours" and not in search of what the magistrate could have reasonably inferred from that statement). Reviewing courts should only be concerned with whether the magistrate's determination in interpreting and drawing reasonable inferences from the affidavit was done in a commonsensical and realistic manner. And reviewing courts should defer to all reasonable inferences that the magistrate could have made.

## III. CONCLUSION

We reverse the judgment of the court of appeals and remand this case to the trial court for further proceedings not inconsistent with this opinion.


Hervey, J.


Delivered: April 13, 2011
Publish